# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

IAN SMITH and JANINE SMITH, :

    Plaintiffs                :         CIVIL ACTION NO. 3:17-2123

    v.                            :             (JUDGE MANNION)

BRAIN W. MAY and LORELEI MAY,:

    Defendants            :

## MEMORANDUM

The plaintiffs, purchasers of the defendants' house, filed this action alleging that the defendants failed to disclose material defects with the house in violation of the Pennsylvania Real Estate Seller Disclosure Law ("RESDL"), 68 Pa.C.S. §7301, *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.Stat. §201-1, *et seq*. Plaintiffs also assert common law fraud and negligent misrepresentation claims. Presently before the court is the defendants' motion to dismiss all of plaintiffs' claims made pursuant to [Fed. R. Civ. Pro. 12(b)(6)](). The defendants' motion argues that the case should be dismissed based on the parol evidence rule, and, for failure to state any cognizable claims under the RESDL and under the UTPCPL. Defendants also seeks dismissal of plaintiffs' complaint for failure to plead a fraud claim and a negligent misrepresentation claim, and for failure to show a right to rescission. Because the court finds that the plaintiffs have stated plausible claims for relief, the court will **DENY** the defendants' motion in its entirety.

I. **Factual Background**[1]

This case arises from a real estate property transaction that occurred on March 21, 2017 when an agreement was made whereby plaintiffs, Ian and Janine Smith, husband and wife, agreed to buy the Lehman Township, Luzerne County, Pennsylvania house of defendants, Brian and Lorelei May, husband and wife. The plaintiffs contend defendants violated the RESDL, UTPCPL, and committed common law fraud by concealing material defects in their house, including, bat guano in the heating-cooling system. Plaintiffs essentially allege that prior to the sales agreement, defendants knew that bat guano was present in the heating-cooling system of their house and were aware of other problems in the house, that they hid these problems, and failed to disclose these material defects. Plaintiffs allege that after the sale of the house was complete and after they began living in the house, they suffered respiratory, eye, skin and scalp irritations that led to the discovery of the bat guano in the house's air system. Plaintiffs allege that they incurred many costs to repair the house due to the bat guano, including installing a new heating and cooling system. Plaintiffs further allege that defendants hid water leakage, basement dampness and mold that existed in the house, and that they had to incur costs to repair these problems as well.

---

[1]The court briefly states the facts alleged in plaintiffs' complaint since they are set forth in the briefs of the parties as well as the complaint, (Doc. 1). Also, the facts alleged in plaintiff's complaint, (Doc. 1), must be accepted as true in considering the defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 F.App'x 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

## II. Procedural Background

The plaintiffs filed their complaint on November 17, 2017. (Doc. 1). The complaint asserts five counts. Count 1 is a claim under the RESDL. Count 2 asserts a private action claim under the UTPCPL. Count 3 raises a state law fraud claim. Count 4 raises a state law negligent misrepresentation claim. In Count 5, plaintiffs plead, in the alternative, rescission seeking to reserve this remedy to rescind the house sale transaction. The plaintiffs aver that this federal court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. §1332.

On January 22, 2018, the defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), (Doc. 8), and brief in support, (Doc. 9), with seven attached exhibits. The plaintiffs filed their brief in opposition on February 16, 2018, with an attached exhibit. (Doc. 14). The defendants filed their reply brief on February 23, 2018. (Doc. 15). After obtaining leave of court, the plaintiffs filed a sur-reply brief on February 27, 2018. (Doc. 19). The case is now ripe for the court's decision.[2]

## III. Discussion

Because this is a case based upon diversity jurisdiction, 28 U.S.C. §1332, the court applies Pennsylvania law. *See Moore v. Kulicke & Soffa*

---

[2]Since the briefs of the parties state the correct legal standard applicable to a Rule 12(b)(6) motion, the court does not repeat it herein.

*Industries, Inc.,* [318 F.3d 561, 563 (3d Cir. 2003)](#).

Initially, defendants argue in their reply brief that all of plaintiffs' claims regarding the alleged false representations which they made with respect to roof water leakage, basement dampness, bat guano, problems with HVAC, and mold, fail since the complaint does not allege any current problems exist with these issues. Defendants state that they disclosed the roof leak, it was noted in the Sobeck Report, and that an addendum to the sales agreement was prepared to resolve this problem. (Doc. 9, Ex. F). Defendants state that plaintiffs fail to allege any current issue regarding basement dampness. Defendants state that the complaint fails to allege that there are bats or bat guano at the house since the plaintiffs bought it or that any bats or bat guano was discovered. Defendants further state that plaintiffs do not allege that any HVAC problems exist during the time they have owned the house. Defendants also state that plaintiffs do not allege that they found mold in the house or that they had to have mold removed from the house, and only allege that mold may have existed before they owned the house. As such, defendants maintain that plaintiffs' claims are based on speculation, conjecture and hearsay, and that since they do not allege that they are currently experiencing any issues with the house regarding the stated problems, they fail to state a claim.

Plaintiffs state that the allegations in their complaint do in fact show that all of the problems with the house were hidden from them by defendants, that the problems existed at the time of the closing, and that they did not discover

the problems until they were living in the house.

The Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), stated that where the facts pleaded "do not permit the court to infer more than a mere possibility of misconduct, the complaint has not 'shown' that the pleader is entitled to relief." Upon reviewing the allegations in the complaint, the court finds that plaintiffs have sufficiently alleged that defendants were aware of all of the defects in the house prior to the closing, that defendants failed to disclose these defects and, that defendants took steps to fraudulently conceal the defects. Plaintiffs also allege that Defendants "chose not to complete the Disclosure truthfully." Thus, plaintiffs have adequately plead that all of the alleged hidden defects existed at the time of the closing and that they were not discovered until after the closing. Also the court finds that plaintiffs have alleged sufficient facts to show that the defects with the house currently exist and, that they existed at the closing and when the deed was transferred. As such, plaintiffs have sufficiently alleged that there was continuous and existing problems with the house, of which defendants were aware and concealed, and which remained after the closing.

Next, defendants argue that the parol evidence rule bars plaintiffs' claims and that plaintiffs failed to state a claim under the RESDL. On March 21, 2017, the parties entered into a sales agreement for plaintiffs to buy defendants' house. (Doc. 9-1). Plaintiffs allege that under the RESDL, defendants also gave them a Seller's Premises Disclosure Statement ("disclosure statement") on the same date which both parties signed. (Doc.

5

9-2). Plaintiffs state that defendants indicated in the disclosure statement that they were not aware of any heating and air conditioning problems, that they were not aware of any hazardous substances or environmental problems in the house, and that they were not aware of any other undisclosed material defects. Defendants also indicated in the disclosure statement that they were not aware of any roof leakage problems or any water leakage and dampness problems in the basement. Plaintiffs allege that the day after the disclosure statement was signed, defendants contacted a company to examine their house's heating and cooling system and to determine what repairs it needed. Plaintiffs allege that defendants never disclosed to them the defects discovered in the heating-cooling system of the house despite knowing them and that defendants failed to disclose the estimate they received to repair the problems with the system, including a needed air filtration system. Plaintiffs also allege that defendants' contractor knew about the bat guano in the heating-cooling system and that defendants basically directed him not to disclose this problem if he was contacted by plaintiffs. Plaintiffs also allege that prior to the sales agreement, defendants had their children sleep downstairs in the house to avoid the air problems in the upstairs and that when plaintiffs came to the house, defendants used strong scented oils to mask the air problems. Plaintiffs also state that their pre-closing inspections of the house were not designed to find concealed defects with the house.

On May 12, 2017, the closing for the house was held and defendants deeded their house to plaintiffs. As mentioned, plaintiffs basically allege that

although the bat guano (known to defendants) was present in the house prior to the closing, that they did not discover the bat guano in the house's air system until after the sale of the house when they began living in the house and suffered physical ailments. Thus, plaintiffs allege that "defendants hid their bat guano air problems from [them] before, at and after the sales agreement." Further, plaintiffs allege that defendants concealed water and mold problems with the house. Plaintiffs aver that they had to expend substantial amounts of money to repair all of the hidden defects and to make the house habitable.

Defendants argue that the parol evidence rule bars plaintiffs claim under the RESDL and that they fail to state a cognizable claim. The parol evidence rule "precludes evidence of verbal representations that are not contained in the sale agreement when the sale agreement purports to contain the sole terms of the agreement." Gordon v. McManus, 2014 WL 10917627, *8 (Pa.Super. 2014) (citing Lenihan v. Howe, 674 A.2d 273, 275 (Pa.Super. 1996), quoting Gianni v. Russell & Co., Inc., 126 A. 791, 792 (Pa.1924) ("Where parties, 'without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of this agreement.'")). "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Yocca v. Pitts. Steelers Sports, Inc. 578 Pa. 479,

498, 854 A.2d 425, 436-37 (Pa. 2004) (citation omitted).

As the court in Gordon, 2014 WL 10917627, *9, explained:

> if a verbal representation is made as to the character or quality of the land and/or building conditions and said conditions are reasonably apparent from the inspection of the premise, the parol evidence rule will exclude evidence of the verbal representation if the representation is not included in the written sale agreement and the sale agreement contains an integration clause. *See* Mancini v. Morrow, 458 A.2d 580, 584 (Pa.Super. 1983) (distinguishing between a damaged septic system which the buyer could not have reasonably inspected, and a water leakage problem that was discovered by the purchaser during the course of inspection; the latter of which constituted an observable physical condition rendering any verbal representation of that condition inadmissible.) Therefore, if a party is provided an opportunity to view and inspect the objectionable condition at issue and does not insist on further contractual protection or deletion of an overly broad integration clause, the integration clause in the sales agreement will remain in effect and the parties will be bound to the language of the contract. Id.

"If the signed sales agreement contains an integration clause, the parol evidence rule prevents the buyer from presenting evidence of the verbal representation if said representation was left out of the sale agreement." Id. at *8. In the instant case, there was an integration clause in the sales agreement which provided as follows:

> This Agreement contains the entire agreement between the Sellers and the Buyers, and there are no other terms, obligations, covenants, representations, statements or conditions, all of otherwise of any kind whatsoever concerning the same. Furthermore, this Agreement shall not be altered, amended, changed or modified, except in writing and executed by all the parties hereto.

(Doc. 9-2 ¶ 20).

There was also an "as/is" clause in the sales agreement which stated

8

in pertinent part: "Specifically, the Sellers make no express or implied warranties [ ] with respect to the physical condition of the premises or as to its merchantability or fitness for any particular purpose." (Doc. 9-2 ¶ 27).

In particular, defendants contend that the parol evidence rule prevents plaintiffs from offering any evidence of their alleged fraudulent representations before and after the sales agreement since these representations were not part of the sales agreement, i.e., the contract between the parties. Defendants argue that plaintiffs are barred from presenting any evidence of their alleged representations, including those made in the disclosure statement, since the real estate sale was governed by the signed sales agreement and the representations are not contained in this agreement. Defendants also contend that plaintiffs cannot recover since the sales agreement made clear that they made no express or implied warranties with respect to the physical condition of the house. As such, defendants argue that plaintiffs are barred from asserting their claims by the provisions of the sales agreement. Defendants state that the language of the sales agreement supersedes the disclosure statement, and that the two documents are separate and distinct. They further state that there is no dispute that the disclosure statement was not incorporated into the sales agreement and since this statement was not part of the sales agreement it cannot be admitted into evidence. Thus, defendants maintain that plaintiffs have failed to state any claims for relief.

Plaintiffs respond by stating that the bat guano which caused the air problems was not readily observable upon inspection, that it existed before

and after the sales agreement, that defendants were aware of the problem and concealed it, including a proposal from a contractor to fix the problem, and that they (plaintiffs) did not discover it until after they moved into the house and began to experience side effects from it. Plaintiffs state that although the disclosure statement is not incorporated into the sales agreement, it is a collateral document not part of the written sales agreement that may be admitted into evidence without violating the parol evidence rule. Plaintiffs also emphasize that they have not asserted any contract claims and that their claims are not based on any alleged breach of the sales agreement.

The Pennsylvania gist of the action doctrine "precludes plaintiffs from casting ordinary breach of contract claims as tort claims." *McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010). Thus, a court must determine whether a plaintiff's actions lie in tort or contract where an underlying contract exists. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Only where the contract claim is collateral to the tort claim will the tort claim be allowed to proceed. *Egan v. USI Mid-Atlantic, Inc.*, 92 A.3d 1, 18 (Pa. Super. Ct. 2014).

> In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (internal citations omitted).

The court finds that under the gist of the action doctrine, plaintiffs' claims are not intertwined with or grounded in the obligations contained in the sales agreement. As plaintiffs state, "[n]one of defendants' alleged duty breaches arise from the terms in the sales agreement." "Rather, defendants' alleged culpable conduct involves breaches of duties imposed by tort law and statutes, as a matter of social policy." Also, plaintiffs do not raise any breach of contract claim in this case based on the sales agreement and plaintiffs are not attempting to offer any evidence outside of the sales agreement to try and explain or vary the terms of the sales agreement. Thus, plaintiffs' claims against defendants are not barred by the gist of the action doctrine since they are independent of the sales agreement. *See Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429–430 (Pa. Super. Ct. 2016) (finding it "far from clear" that the plaintiff's fraudulently misrepresentation claim was barred by the gist of the action doctrine based on the complaint alone). Since plaintiffs assert claims sounding in fraud as opposed to contract claims, this makes the court's determination of whether the claims are truly in tort or contract less difficult. *See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012) (collecting cases and concluding that plaintiff's fraud claim was not barred by the gist of the action doctrine).

Further, the court finds that the parol evidence rule does not bar plaintiffs from relying upon the disclosure statement and defendants'

11

representations made therein to support their claims. As discussed, plaintiffs' claims are not based on contractual breaches and they are not created and grounded in the contract, i.e. sales agreement. Also, as stated, the alleged tortious conduct is the gist of the action and the contract is merely collateral.

Nor are plaintiffs trying to modify the terms of the sales agreement by parol evidence. Rather, as plaintiffs state, "[they] allege they would not have proceeded to closing and purchased defendants' home but for defendants' [alleged] fraudulent misrepresentations." Plaintiffs also allege that they would not have signed the sales agreement on March 21, 2017 if defendants had not made the alleged misrepresentations in the disclosure statement and, that they would not have proceeded to the closing on May 12, 2017, if defendants "had not engaged in their [alleged] fraudulent course of conduct" between the two dates. Thus, the cases defendants rely upon are distinguishable from this case, and plaintiffs' claims are not barred by the parol evidence rule since plaintiffs are not trying to alter, explain or modify the terms of the sales agreement. In short, the parol evidence rule does not bar any of plaintiffs' claims since they are not contract claims and they are not trying to explain or vary the terms of any contract. *Cf.* Marano v. Fulton Bank, N.A., 2017 WL 1242793, *3 (Pa.Super. April 4, 2017) (under the parol evidence rule "evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.") (citation omitted).

Defendants also move to dismiss plaintiffs' claim under the RESDL. In

12

Ries v. Curtis, 664 Fed.Appx. 206, 209 (3d Cir. 2016), the Third Circuit stated that "[t]he RESDL requires sellers of [residential] property [to complete a disclosure statement and] to disclose 'any material defects with the property'" known to the sellers. (citing 68 Pa.C.S. §7303). The term "material defect" in the RESDL is defined as "[a] problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property." 68 Pa. Cons.Stat. §7102.

> The RESDL, also provides as follows:
>
> The seller is not obligated by this chapter to make any specific investigation or inquiry in an effort to complete the property disclosure statement. In completing the property disclosure statement, the seller shall not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading and shall not fail to disclose a known material defect.

Id. §7308.

Additionally, the RESDL provides that any seller who willfully or negligently violates or fails to perform any duty prescribed by this law "shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this [law]." Id. §7311(a). Section 7311(a) also provides that "[t]his subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law."

In the instant case, plaintiffs allege that defendants had actual knowledge of the stated material defects with their house, that they did not

13

disclose them in the disclosure statement, and that they knowingly concealed them. Plaintiffs argue that defendants attempt to dismiss their claim under the RESDL based on the parol evidence rule is without merit since §7311(a) creates a statutory cause of action and "expands the seller's obligations and the buyer's remedies" beyond common law. Plaintiffs cite to Star v. Rosenthal, 884 F.Supp.2d 319, 327 (E.D.Pa. 2012), for support. *See also* Ries v. Curtis, 2014 WL 5364972, *6 (E.D.Pa. Oct. 22, 2014), aff'd 664 Fed.Appx. 206 (3d Cir. 2016) ("the [RESDL] obligates sellers of residential real estate to inform home buyers of material defects known to the sellers").

The district court in Ries, 2014 WL 5364972, *8, explained that the RESDL "requires that the seller 'disclose to the buyer **any** material defects with the property known to the seller.'" (emphasis in original) (citing 68 Pa.Cons.Stat. §7303). Further, "[t]his disclosure must be made and given to the buyer 'prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.'" Id. (citation omitted). Additionally, plaintiffs can "recover any actual damages suffered as a result of Defendants' violation of the RESDL." Ries, 2014 WL 5364972, *9; *see also* 68 Pa.Cons.Stat. §7311(a).

In light of the above, defendants' motion to dismiss plaintiffs' claim under the RESDL will be denied. *See* Ries, 2014 WL 5364972, *9.

Defendants also move to dismiss plaintiffs' claims for fraud, their UTPCPL claim, and their negligent misrepresentation claim.

In Gordon, 2014 WL 10917627, *7, the court stated that "[i]n order to

14

establish fraud a plaintiff must establish the following:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Blumenstock v. Gibson, 811 A.2d 1029, 1034, (Pa.Super.2002), quoting, Sewak v. Lockhart, 699 A.2d 755, 759 (Pa.Super.1997) (citations omitted).

"Under Pennsylvania law, claims of fraud require proof by clear and convincing evidence." Ries, 2014 WL 5364972, *12 (citing EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 275 (3d Cir. 2010)). "A misrepresentation is material if it is of such character that ... had it not been made, the transaction would not have been consummated." Id. (quoting Sevin v. Kelshaw, 417 Pa.Super. 1, 611 A.2d 1232, 1237 (Pa.Super. 1992)).

Additionally, "[i]t is not sufficient, [ ], to merely assert that a statement is 'fraudulent' and that reliance on the statement induced some action on the party's behalf, nor is it enough to aver that a knowingly false statement was made for the purpose of misleading another into reliance upon it." Gordon, 2014 WL 10917627, *7 (citations omitted). Further, to overcome a motion to dismiss, the plaintiff must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of each cause of action. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

"In real estate transactions specifically, [Pennsylvania] courts have concluded that 'fraud arises when a seller knowingly makes a

15

misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose." Gordon, 2014 WL 10917627, *7 (citing Sewak, at 759). In the present case, the type of fraud plaintiffs allege is "fraud in the inducement" which arises "when the representations are fraudulently made so as to induce the party to enter into the agreement and the buyer subsequently asserts 'but for' those representations he would never have entered into the agreement." Id. (citation omitted).

The court in Gordon, Id. at *17-*18, also discussed the elements to establish a negligent misrepresentation claim, and stated that the plaintiff must show the following:

> "(1) misrepresentation of a material fact; (2) made under circumstances in which the declarant ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance upon the misrepresentation." Bortz v. Noon, 729 A.2d 555, 561 (Pa.1999), citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa.1994).

"Additionally, under the UTP[CPL] a Plaintiff must prove all the same elements as fraud." Id. at *18 (citing Yocca v. Pittsburgh Stealers Sports, Inc., 854 A.2d 425 (Pa. 2004)); Ries, 2014 WL 5364972, *9 ("The UTPCPL prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce.") (citing 73 Pa.Stat. §201–3). Pennsylvania courts have found that the private right of action provision of the UTPCPL, §201–9.2(a), applies to real estate transactions. Star, 884 F.Supp.2d at 330 n. 7 (citations omitted). Further, under the catchall provision of the UTPCPL, 73 Pa.Stat.Ann. §201–2(4)(xxi), the meaning of the phrases "unfair methods of competition"

16

and "unfair or deceptive acts or practices" includes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

"To state a plausible claim under the UTPCPL, the Complaint must allege that: '(1) [Plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose; (2) [Plaintiff] suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL." Ries, 2014 WL 5364972, *9 (citations omitted). "The Complaint must also allege that Plaintiff justifiably relied on the deceptive conduct." Id. (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (concluding that "plaintiffs alleging deceptive conduct under the ... catchall provision must allege justifiable reliance")). Thus, "the Complaint must plausibly claim that knowledge of the deceptive conduct 'would have changed [Plaintiff's] conduct.'" Id. (citing Hunt, 538 F.3d at 227). Further, "the UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Id. (citing Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 881 (Pa. 2007)).

"The common element to [plaintiffs' fraud claim, UTPCPL claim, and negligent misrepresentation claim] is justifiable reliance." Gordon, Id. at *18. "The justifiable reliance on representations depends on the knowledge of the recipient, if the buyer 'knew or should have known the information supplied

17

was false,' the buyer's reliance is not justifiable." Id. (citing Porreco v. Porreco, 811 A.2d 566, 571 (Pa. 2002)). Further, "[u]nsupported assertions and conclusory accusations of fraud are not sufficient to establish" such claims. Id. (citations omitted). The court finds that the plaintiffs have sufficiently alleged deceptive conduct by defendants, their (plaintiffs') justifiable reliance, and their ascertainable loss.

As discussed, plaintiffs will be permitted to produce evidence outside of the sales agreement to show defendants' alleged misrepresentations. Since plaintiffs will be permitted to present evidence regarding defendants' alleged misrepresentations, including those made in the disclosure statement, which are required to prove the existence of fraud, they can proceed on their fraud claim. Plaintiffs will also be permitted to present evidence that they justifiably relied upon the alleged misrepresentations made by defendants. Further, since plaintiffs will be able to present evidence to try and establish fraud, their claim for a violation of the UTPCPL can also proceed. Additionally, plaintiffs will be allowed to present evidence to try and prove that defendants negligently misrepresented facts to them. As such, the court finds that plaintiffs have alleged sufficient facts to proceed with their fraud claim, their UTPCPL claim, and their negligent misrepresentation claim against defendants. *See* Ries, 2014 WL 5364972.

Finally, in Count 5, plaintiffs seek, in the alterative, the right to elect "to rescind their transaction with [defendants]." Defendants state that plaintiffs are not entitled to rescission since they did not allege any facts which identifies

any current defects with the house, and that "there is no case or statute that permits a buyer to rescind the sale of a home because of alleged problems that were remediated and no longer exist." Thus, they contend that there can be no misrepresentations of alleged material defects with the house that no longer exist. In response, plaintiffs clarify that as an alternative remedy, they seek rescission of the deed and not the sales agreement.

In Star, 884 F.Supp.2d at 329, the court discussed the right of rescission regarding the sale of real estate and stated:

> In the context of sales of real property, a seller not only has an obligation not to intentionally conceal material information, but must also avoid innocent misrepresentations of material facts. *See* Boyle v. Odell, 413 Pa.Super. 562, 605 A.2d 1260, 1265 (1992) ("[I]f it is determined that a purchaser in a real estate transaction has suffered from fraud by the seller, even in the nature of an innocent misrepresentation of a material fact, a right of rescission is established. Moreover, the purchaser is given the election of remedies; he may seek to **rescind the deed**, or in the alternative, may sue for damages.") (citations omitted) (emphasis added).

The court finds that plaintiffs may seek rescission of the deed as alternative relief in this case. *See id.* Thus, defendants' motion to dismiss Count 5 will be denied.

## IV. Conclusion

For the reasons discussed above, the defendants' motion to dismiss, (Doc. 8), is **DENIED IN ITS ENTIRETY**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 28, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-2123-01.wpd